775 So.2d 1291 (2000)
Dewight E. SIMS, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-KA-01065-COA.
Court of Appeals of Mississippi.
November 28, 2000.
*1292 Anthony J. Buckley, Laurel, Attorney for Appellant.
Office of the Attorney General by John R. Henry, Jr., Attorney for Appellee.
BEFORE SOUTHWICK, P.J., IRVING, AND MYERS, JJ.
SOUTHWICK, P.J., for the Court:
¶ 1. Dewight Sims was convicted of felony shoplifting. On appeal he argues that evidence of a surveillance video should not have been admitted and his habitual offender status was never proved. We disagree and affirm.

FACTS
¶ 2. Sims was indicted for shoplifting a case of beer from a Jones County store. The cashier testified that while she was on duty on the relevant night, Sims/the appellant entered the store several times. After he left the last time, the cashier noticed that a case of beer was missing from the display. The next day, she and the owner viewed the previous night's surveillance video, and it showed Sims taking the merchandise. A few days later, Sims entered the store again. At that time the cashier asked Sims if he was going to pay for the beer. After declining to do so, the cashier called the police. Officer Jason Strickland responded to the call and viewed the video.
¶ 3. Sims was indicted for shoplifting. The indictment was later amended to add habitual offender recitals. Sims was convicted and his appeals has been deflected here.

DISCUSSION

1. Admissibility of Surveillance videotape
¶ 4. Sims argues that the surveillance tape was not properly authenticated, that it was not the original and that the chain of evidence has been broken. The tape was admitted during the testimony of the cashier who was the only clerk on duty the night the case of beer was stolen. However, before being admitted, the defense was allowed to question the cashier about the videotape. She testified that she had no knowledge of the tape being copied and that it was the tape that she had viewed at the district attorney's office the day before the trial and also the morning after the incident. The tape was then admitted over the objections by the defense.
¶ 5. As to chain of custody, Officer Strickland testified that the owner turned the tape over to him at the police station approximately thirty minutes after the officer took the incident report and viewed the video at the store. Strickland then gave the video to a detective. That detective did not testify, and the cashier was the only other witness who testified as to what was on the video and its custody. The absence of testimony from individuals who at various times had the evidence in their possession does not prevent admission of the videotape, as every person who comes into contact with the evidence need not testify. Gilley v. State, 748 So.2d 123, 127 (Miss.1999).
¶ 6. A defect in a chain of custody arises if there is any suggestion of tampering or substitution of evidence. Wells v. State, 604 So.2d 271, 277 (Miss.1992). No evidence of such tampering was introduced. The cashier agreed that the tape accurately reflected the scene in the store on the relevant night, though she had not witnessed the shoplifting itself that was captured on film.
¶ 7. The defense argues that the tape had been condensed for trial purposes, but *1293 we do not find that claim supported by the evidence. We have reviewed the videotape, and it appears to be a several hour recording of a continuously running camera, not edited just to the shoplifting event. There was no evidence below of tampering. We find no abuse of discretion in the trial court's resolution of this chain of custody question. Doby v. State, 532 So.2d 584, 588 (Miss.1988).
¶ 8. As to the authentication of the tape, Sims argues that the tape is a copy. However, as stated previously, there was no evidence of that introduced at trial. Additionally, the tape was properly authenticated by the cashier, who was familiar with the scene depicted on the tape. Wells v. State, 604 So.2d 271, 277 (Miss. 1992). The cashier testified that the videotape was an accurate depiction of the store on the night in question. It was properly authenticated.

2. Habitual Offender
¶ 9. Sims next argues that there were three errors that invalidate his being sentenced as a habitual offender. We will discuss each in turn.
¶ 10. Sims states that the indictment was amended to include the habitual offender recitals without notice to him. He acknowledges that an indictment may be amended to add a habitual offender charge. URCCC 7.09. Here the State the week before trial filed a motion to amend. On the day of trial a brief on-therecord argument about the amendment occurred. There defense counsel objected at that hearing that the trial court on the preceding day had already approved the amendment. An order granting the motion is dated the day before this hearing. Even so, before the trial started the court gave defense counsel an opportunity to present anything "that would cause the court to be concerned about the amendment," but counsel only raised the question that it had been amended already without his having an opportunity to object.
¶ 11. Even when an amendment is otherwise proper, it should be permitted only if the accused has "a fair opportunity to present a defense and is not unfairly surprised." URCCC 7.09. Since counsel was given an opportunity to present an argument that might justify denying the amendment, we find no error merely because the amendment may have been allowed before the hearing was held.
¶ 12. The second alleged error as to the amendment is that one of the prior felony convictions relied upon by the State occurred after the crime of shoplifting for which he was being tried. In December of 1998, Sims had been sentenced for burglary of a building, a sentence that was imposed after the April 1998 shoplifting incident. We find no requirement that a prior felony conviction used to enhance a sentence must have been entered before the crime occurred for which sentence is to be pronounced. The habitual offender statute states this:
Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
Miss.Code Ann. § 99-19-81 (Rev.2000).
¶ 13. That the enhancing conviction precede the new conviction is the only date requirement. Here, Sims was convicted of felony shoplifting in May 1999 and at that time had two prior felony convictions. Sims is subject to the habitual offender statute.
¶ 14. The final alleged error is that the State did not prove the existence of *1294 these prior two convictions. A prior convictions may be proven with introduction of the original commitment papers concerning the prior convictions. Pace v. State, 407 So.2d 530, 534 (Miss.1981), overruled on other grounds; Hopson v. State, 625 So.2d 395, 399 (Miss.1993). Introduction of the original or certified copies of the commitment papers is the common means by which prior convictions for enhancement purposes are proved. Smith v. State, 729 So.2d 1191, 1222 (Miss.1998). The Supreme Court has stated that the best evidence is the judgment of conviction, but that other evidence suffices as well. Stringer v. State, 500 So.2d 928, 942 (Miss.1986) (examples of other means).
¶ 15. Here, the prior sentencing orders were not formally introduced into evidence at the sentencing hearing. Instead, Sims was questioned in open court by the judge immediately after the jury's verdict. Sims admitted to both convictions without objections from the defense. A certified copy of the commitment papers for one felony conviction and a copy of the sentencing order for the second felony conviction were filed with the court papers the next day, but we find no reference to them at the sentencing hearing. Sims's attorney made no objection to the State's failure to place certified commitment papers into evidence.
¶ 16. In his response to the court's questions, Sims admitted that the two previous felony convictions charged in the indictment had occurred. When an accused fails to object to the habitual offender issue during the sentencing phase, he is procedurally barred to do so the first time on appeal. Cummings v. State, 465 So.2d 993, 995 (Miss.1985). In Cummings, the defendant alleged that the State did not prove beyond a reasonable doubt that he met the requirements of the habitual offender statute. Id., (referring to Miss. Code Ann. § 99-17-83). However, the defendant also failed to make any objections or cross examine any witness. Therefore he had no right to claim inadequacies for the first time on appeal. Id. Here, Sims failed to make any objections during sentencing and is therefore procedurally barred now.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF JONES COUNTY OF CONVICTION OF FELONY SHOPLIFTING AND SENTENCE OF FIVE YEARS IN THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS AN HABITUAL OFFENDER IS AFFIRMED. SENTENCE TO RUN CONSECUTIVE TO LAUDERDALE COUNTY BURGLARY SENTENCE. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JONES COUNTY.
McMILLIN, C.J., KING, P.J., BRIDGES, IRVING, LEE, MOORE, MYERS, PAYNE, AND THOMAS, JJ., CONCUR.